# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

| | | |
|---|---|---|
| THERESA ELIZABETH ROBERTSON | § § § § | PLAINTIFF |
| v. | § § § | Civil No. 3:18cv546-HSO-JCG |
| UNIVERSITY OF MISSISSIPPI MEDICAL CENTER; LARRY C. MARTIN; PATRICK O. SMITH; LOUANN WOODWARD | § § § § § | DEFENDANTS |

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT LARRY C. MARTIN'S MOTION [17] FOR QUALIFIED IMMUNITY AND GRANTING DEFENDANT PATRICK O. SMITH'S MOTION [23] FOR QUALIFIED IMMUNITY

BEFORE THE COURT are Defendant Dr. Larry C. Martin's Motion [17] for Qualified Immunity, and Defendant Dr. Patrick O. Smith's Motion [23] for Qualified Immunity. This suit arises out of Plaintiff Theresa Elizabeth Robertson's allegations that she was subjected to sex discrimination and retaliation for engaging in protected speech, which she asserts occurred during her employment with Defendant University of Mississippi Medical Center. Plaintiff claims that Defendants discriminated and retaliated against her for opposing acts of discrimination in the workplace.

After review of the Motions, pleadings, and relevant legal authority, the Court finds that Defendant Larry C. Martin's Motion [17] for Qualified Immunity should be granted in part, to the extent he invokes qualified immunity from

1

Plaintiff's claim that he constructively discharged her, and denied in part insofar as it relates to Plaintiff's sex discrimination and retaliation claims premised upon Defendant Martin's demotion of Plaintiff. The Court further finds that Defendant Patrick O. Smith's Motion [23] for Qualified Immunity should be granted, and that Plaintiff's claims against Defendant Smith should be dismissed with prejudice.

# I. BACKGROUND

## A. Relevant facts

Plaintiff Theresa Elizabeth Robertson ("Plaintiff") is a female trauma surgeon who was hired by Defendant University of Mississippi Medical Center ("UMMC") in July 2013. First Am. Compl. [3] at 3. During the course of her employment, she was promoted to the position of Co-Director of the Surgical Intensive Care Unit ("SICU"). *Id.*

On December 1, 2016, Plaintiff received a text message from the chair of surgery asking her to meet in his office. *Id.* at 4. When Plaintiff arrived, the chair of surgery was present along with Defendant Dr. Larry C. Martin ("Martin"), the medical director of UMMC. *Id.* at 2, 4. Plaintiff was shown an iCare report[1] in which an employee complained about Plaintiff "bullying" the employee during rounds on November 28, 2016. *Id.* Martin told Plaintiff that she should "walk on eggshells" and that in the previous month three other iCare reports had been submitted about her tone. *Id.* Plaintiff asserts that Martin assumed the reports were true without conducting any meaningful investigation. *Id.* According to

---

[1] The record does not clearly describe what an iCare report is, but it appears to be a system by which UMMC staff can report complaints about other staff members. *See* First Am. Compl. [3] at 4, 7.

Plaintiff, Martin assumed that her history of debilitating migraines and depression was interfering with her job performance, and that for this reason, Martin required her to attend a psychological evaluation upon pain of both termination and referral to the medical licensure board. *Id.* at 5.

A psychological evaluation occurred later in the afternoon on December 1, 2016. *Id.* at 6. Plaintiff was medically cleared to return to work, but it was recommended that she receive a professional assessment and expert assistance to adjust her migraine medication. *Id.* at 6. The evaluating psychologist also suggested a course for "distressed physicians." *Id.*

On December 3 and 4, 2016, Plaintiff discussed the iCare report with three fellow employees. *Id.* She maintains that the content of these conversations focused on improving the issues and her concern for her job. *Id.* A few days later, Plaintiff was summoned to another supervisory meeting, which included Defendant Dr. Patrick O. Smith ("Smith"), the chief facility affairs officer of UMMC, *id.* at 2, where she claims she was accused of being rude and retaliating against the individuals who filed the iCare reports, *id.* at 7. Following this meeting Plaintiff was placed on administrative leave with pay, Defs.' Reply [31] at 2, where she remained for eight months, *id.*; First Am. Compl. [3] at 7. Plaintiff asserts that Smith later testified in another proceeding[2] that he was "in charge" of the procedure for investigating and either removing or returning her to duty status. First Am. Compl. [3] at 7.

_____

[2] The nature of the other proceeding is not specified in the record.

On December 8, 2016, Plaintiff forwarded correspondence to Defendants[3] noting that the actions taken against her constituted unlawful disability and sex discrimination. *Id.* According to Plaintiff, Defendants' counsel responded to the letter by stating that alerting Plaintiff's supervisors of her allegations would "polarize them against her." *Id.*

Plaintiff was subsequently evaluated at Vanderbilt University and was medically cleared to return to work. *Id.* It was noted that her migraine and depression medications had been adjusted, that she may need some accommodations for her conditions at work, and that she should enter a one-year monitoring agreement with the Mississippi PHP.[4] *Id.* at 8. The evaluation further stated that "there are significant gender and cultural components to the complaints she has received." *Id.*

Plaintiff alleges that before she was permitted to return to work, Defendants[5] required that she "go on an 'apology tour'" to staff. *Id.* Martin[6] also removed Plaintiff from her position as Co-Director of the SICU and replaced her with himself, a male with no comparable disability, history of disability, or equal employment opportunity ("EEO") activity. *Id.*; Pl.'s Mem. in Opp'n [30] at 8. The stated reason for removing Plaintiff from this position was to "reduce stress" on her, however she did not request the change, nor did she think it was necessary. First

---

[3] Nowhere in the record is it identified to which Defendants this letter was addressed.
[4] The record does not clarify what the Mississippi PHP is, only noting that this was recommended for Plaintiff.
[5] Plaintiff does not specify which Defendants required her to take this action.
[6] Plaintiff states in her First Amended Complaint that "[s]he was also stripped of her position as Co-Director of the SICU," but does not clarify who undertook this action. First Am. Compl. [3] at 8. Plaintiff only asserts the fact that Martin replaced her in her Memorandum in Opposition.

Am. Compl. [3] at 8. Plaintiff did request a reduction in the number of "back-to-back" shifts she was assigned to work to accommodate her medical condition. *Id.* Nevertheless, upon her return Martin scheduled her to work for six out of seven continuous shifts during her first work schedule. *Id.* These two 36 hour working periods were separated by only a 12-hour break. *Id.* Plaintiff's schedule, which required her to work 72 out of 84 hours, was the most concentrated period of work on the schedule for any surgeon in the department. *Id.* at 8-9.

Plaintiff wrote "the Defendant"[7] again and stated that the "apology tour" and the scheduling appeared to be discriminatory, in retaliation for her engaging in protected activity, and a contravention of the previously-agreed reasonable accommodations. *Id.* at 9. Plaintiff's schedule was then revised to assign her to fewer back-to-back shifts. *Id.* According to Plaintiff, she began to hear rumors around this time that "people" were looking for an excuse to get her fired. *Id.* Plaintiff generally alleges that she was "investigated"[8] by Martin and Smith repeatedly and without cause during this period, *id.*, and was accused of unspecified misconduct which had occurred at a time when she was not present, *id.* Further, Plaintiff claims that she was removed from the schedule and placed back on the schedule the next month, without explanation.[9] *Id.* Defendants[10] also allegedly did not timely approve reasonable leave requests or permit Plaintiff to take leave when

---

[7] It is unclear from the record to which Defendant Plaintiff addressed this letter.

[8] The nature of these investigations is unclear.

[9] Plaintiff later clarifies in her Memorandum in Opposition that both Martin and Smith were responsible for these actions, Pl.'s Mem. in Opp'n [30] at 8, however her First Amended Complaint does not specify who took these actions, First Am. Compl. [3] at 9.

[10] The record is unclear which Defendants were involved in denying Plaintiff's leave requests.

others were allowed to do so under comparable circumstances. *Id.* at 10.

Plaintiff contends that she feared Defendants[11] were manufacturing a pretext to terminate her and that they would possibly take unjustified action to threaten her medical license. *Id.* at 9. She believed she had no alternative but to resign based upon this hostile work environment and submitted a 90-day notice of her resignation as required by her contract, but Defendant[12] allegedly continued to discriminate and retaliate against her. *Id.* at 10. Plaintiff believes she was replaced by one or more male, non-disabled surgeons.[13] *Id.*

Plaintiff identifies as a comparator surgeon Dr. Lonnie Frei ("Frei"), whom she contends regularly shouted at and berated employees but did not have his job or his medical license threatened, nor was he sent for a psychiatric evaluation or placed on administrative leave. *Id.* at 7. Frei was a nondisabled man. *Id.*

B.      Procedural history

Plaintiff filed a Complaint in this Court on August 15, 2018, Compl. [1], followed by a First Amended Complaint on August 24, 2018, First Am. Compl. [3]. The First Amended Complaint advances nine Counts alleging the following causes of action: (1) ADA/Rehabilitation Act Discrimination; (2) ADA/Rehabilitation Act Mandatory Medical Training; (3) ADA/Rehabilitation Act Reasonable Accommodation; (4) ADA/Rehabilitation Act Retaliation; (5) Title VII Sex Discrimination; (6) Title VII Retaliation; (7) Section 1983 Fourteenth Amendment

---

[11] Plaintiff does not identity which Defendants she believes were attempting to do this.
[12] Plaintiff offers no clarification as to which Defendant continued to discriminate and retaliate against her.
[13] It is unclear who made these replacement decisions.

6

Equal Protection; (8) Section 1983 Fourteenth Amendment Retaliation; and (9) *Ex Parte Young.* *Id.* at 10-14. The First Amended Complaint names as Defendants UMMC, Martin, Smith, and Louann Woodward, the chief executive officer of UMMC. *Id.* at 2-3. UMMC is sued solely as to the Rehabilitation Act and Title VII claims in Counts 1 through 6. *Id.* at 2. Martin and Smith are sued only in Counts 7 and 8 in their individual capacities as to Plaintiff's claims arising under 42 U.S.C. § 1983, and not as to any of the other claims. *Id.* Louann Woodward is sued only as to the *Ex Parte Young* claim in Count 9. *Id.* at 3.

Specifically, Plaintiff states that her claims against Martin and Smith are "solely as to the Section 1983 claims asserted." *Id.* at 2. Thus, the focus of Martin's and Smith's Motions are the claims Plaintiff advances against them in Counts 7 and 8. Count 7 is based upon 42 U.S.C. § 1983 and alleges sex discrimination by Martin and Smith in violation of the Equal Protection Clause of the Fourteenth Amendment. *Id.* at 13-14. Plaintiff asserts that Martin discriminated against her by removing her from the position of Co-Director, which stripped her of her SICU responsibilities and shifts, and by then replacing her with a male. *Id.* at 8; Pl.'s Mem. in Opp'n [30] at 8. She claims that Smith discriminated against her on the basis of sex by placing her on administrative leave and keeping her on administrative leave for an extended period of time. First Am. Compl. [3] at 7; Pl.'s Mem. in Opp'n [30] at 7. Plaintiff contends that Martin and Smith both discriminated against her on the basis of sex by engaging in a series of harassing investigations, removing her from the work schedule, constructively discharging

her, and replacing her with a male.  First Am. Compl. [3] at 4, 7-9; Pl.'s Mem. in

Opp'n [30] at 8.  This discrimination is further alleged to have resulted in a hostile

work environment.  *Id.* at 13.

Count 8 is premised upon 42 U.S.C. § 1983 and alleges retaliation in violation

of the First Amendment after Plaintiff engaged in protected speech by reporting sex

discrimination in the workplace.  *Id.* at 14.  Plaintiff also advances retaliation

claims in Counts 4 and 6 for engaging in protected EEOC activity, but these are not

directed against Martin or Smith and are thus not relevant here.  *Id.* at 13-14.

Plaintiff has clarified that her Count 8 retaliation claim is based upon the

incorporation of the First Amendment through the Fourteenth Amendment.  Pl.'s

Mem. in Opp'n [30] at 2.  The retaliatory conduct Martin and Smith are alleged to

have engaged in is the same conduct alleged under Count 7.  *Id.* at 13-14.  Namely,

Plaintiff alleges Martin retaliated against her by removing her from her position as

Co-Director, that Smith retaliated against her by keeping her on administrative

leave, and that both Martin and Smith retaliated against her by engaging in a

series of harassing investigations, removing her from the work schedule, and

constructively discharging her.  *Id.* at 4, 7-9; Pl.'s Mem. in Opp'n [30] at 8-9.

Plaintiff asserts that these retaliatory actions were motivated by her protected

speech.  First Am. Compl. [3] at 14.

Martin and Smith have filed the present Motions [17] [23] for Qualified

Immunity taking the position that Plaintiff's claims against them should be

dismissed.  Martin's Mem. in Supp. [17] at 2; Smith's Mem. in Supp. [23] at 2.

Plaintiff has filed a Memorandum [31] in Opposition countering that she has stated a claim for intentional sex discrimination and First Amendment retaliation against both Martin and Smith, Pl.'s Mem. in Opp'n [30] at 1-2, and that their actions were objectively unreasonable in light of clearly established law, *id.* at 5, 10.

## II. DISCUSSION

### A. Motions [17] [23] for Qualified Immunity

Martin and Smith argue that no clearly established statutory or constitutional rights of Plaintiff were violated such that they are entitled to qualified immunity. Martin's Mem. in Supp. [18] at 2; Smith's Mem. in Supp. [24] at 2. They maintain that at all times alleged in the First Amended Complaint, they were acting in their official capacities as employees of UMMC, and that their actions and interactions with Plaintiff were within the course and scope of their duties as UMMC officials. Martin's Mem. in Supp. [18] at 2; Smith's Mem. in Supp. [24] at 2. Smith further asserts that he was not in Plaintiff's supervisory chain and made no decisions concerning her employment. Smith's Mem. in Supp. [24] at 2.

### 1. Standard of review

In reviewing a motion for qualified immunity, a court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the nonmoving party, in this case Plaintiff. *See Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011). A court will not presume to be true statements which are "legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement." *Id.*

The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal. *Id.* Thus, "[q]ualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019). To determine whether a defendant is entitled to qualified immunity, a court first evaluates whether, taking the facts in the light most favorable to the plaintiff, the official's conduct violated a constitutional right. *Haverda v. Hays Cty.*, 723 F.3d 586, 598 (5th Cir. 2013). Then, it must determine whether the right was clearly established under the constitutional standards applicable at the time of the violation. *Id.*

An official cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite such that any reasonable official in the defendant's position would have understood that he was violating it. *City of Escondido*, 139 S. Ct. at 503. In other words, the Court "must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Morgan*, 659 F.3d at 371-72 (quotations omitted). If, upon viewing the evidence in the light most favorable to the nonmovant, reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

No affidavits, depositions, or other evidence were filed in support of either the

Motions or Plaintiff's Response; thus the Court must resolve the Motions based solely on the pleadings.

Here, to survive Martin and Smith's Motions [17] [23] for Qualified Immunity, the First Amended Complaint must allege sufficient facts to plausibly state a claim that they each violated constitutional rights that were clearly established at the time they each purportedly violated them. *See Anderson v. Valdez*, 845 F.3d 580, 589-90 (5th Cir. 2016).

2.   <u>Martin and Smith's specifically pled conduct</u>

The heightened pleading standard utilized when qualified immunity is at issue requires a plaintiff to provide "allegations of fact focusing specifically on the conduct of the individual who caused the [ ] injury." *Id.* Plaintiffs must "rest their complaint on more than conclusions alone and plead their case with precision and factual specificity." *Nunez v. Simms*, 341 F.3d 385, 388 (5th Cir. 2003). In other words, a "plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Anthony v. Lamar Cty.*, No. 2:17-CV-131-KS-MTP, 2017 WL 4706906, at *3 (S.D. Miss. Oct. 19, 2017) (citing *Backe v. Leblanc*, 691 F.3d 645, 648 (5th Cir. 2012)).

The plaintiff "cannot be allowed to rest on general characterizations, but must speak to the factual particulars of the alleged actions, at least when those facts are known to the plaintiff and are not peculiarly within the knowledge of

defendants." *Schultea v. Wood*, 47 F.3d 1427, 1432 (5th Cir. 1995). If a plaintiff does not provide sufficient factual detail as to an individual defendant, the Court "may, in its discretion, insist that a plaintiff file a reply tailored to an answer pleading the defense of qualified immunity." *Reyes*, 168 F.3d at 161; *Schultea*, 47 F.3d at 1430-32; *Anthony*, 2017 WL 4706906, at *3. The Court will construe Plaintiff's Memorandum in Opposition as a reply and therefore will consider its factual allegations.

At the outset, it is important to note that Plaintiff's First Amended Complaint does not state with specificity which Defendants required her to go on an apology tour; demoted her; removed her from the schedule without notice following her administrative leave; were allegedly manufacturing a pretext to fire her; and denied her leave requests.[14] First Am. Compl. [3] at 8-10. These were insufficient to satisfy the heightened pleading standard required to overcome qualified immunity. Plaintiff did allege that Martin was present for a meeting regarding the initial iCare report, that he scheduled her for concentrated working hours after she returned from administrative leave, and that he investigated her repeatedly and without cause. *Id.* at 4-5, 8-9. Plaintiff also asserted that Smith was in charge of the decision to place her on administrative leave. *Id.* at 7.

However, Plaintiff clarified in her Memorandum in Opposition that Martin demoted her, Pl.'s Mem. in Opp'n [30] at 7-8, and that both Martin and Smith

---

[14] Nor does Plaintiff specifically allege which Defendant replaced her with a male, however because she had left her employment with UMMC at the time this occurred, it is reasonable to assume this information is "peculiarly within the knowledge of defendants," and thus is not subject to the same pleading requirements. *See Schultea*, 47 F.3d at 1432.

removed her from the schedule without notice following her administrative leave, *id.* at 8. The Court will construe this as a reply providing additional, specific factual detail as to these individual Defendants' actions, as contemplated by *Reyes*. *See Reyes*, 168 F.3d at 161. As for the remaining allegations which Plaintiff does not clarify, specifically the apology tour, the allegations that Defendants were manufacturing a pretext to fire her, and the denial of her leave requests, these are not pleaded with sufficient factual specificity to overcome qualified immunity and will not be considered.

Plaintiff contends that the actions undertaken by Martin and Smith violated her clearly established rights under the Equal Protection Clause, and also constituted retaliation for protected speech under the First Amendment. To overcome Martin and Smith's Motions for Qualified Immunity, she must show that Martin's conduct in removing her from her position as Co-Director, Smith's conduct in placing and keeping her on administrative leave, and Martin and Smith's conduct in engaging in a series of investigations, removing her from the work schedule, and constructively discharging her, were actions a reasonable official would have known were unlawful in light of clearly established law.

B.  Plaintiff's prima facie case of sex discrimination under the Equal Protection Clause

Plaintiff maintains that she has pled a prima facie case of employment discrimination based upon her sex by alleging that: (1) Martin discriminated against her on the basis of sex by removing her from the position of Co-Director, stripping her of her SICU responsibilities and shifts, and replacing her with a male,

namely himself; (2) Smith discriminated against her on the basis of sex by placing her on administrative leave and keeping her on that duty status for eight months; and (3) both Martin and Smith discriminated against her on the basis of sex by engaging in a series of harassing investigations, removing her from the work schedule, and constructively discharging her and replacing her with a male.[15]  First Am. Compl. [3] at 4, 7-9; Pl.'s Mem. in Opp'n [30] at 8.  Martin and Smith argue that Plaintiff has not sufficiently pled an adverse employment action or that she was replaced by a male.  Defs.' Reply [31] at 2-4.

Sex discrimination in public employment violates the Equal Protection Clause of the Fourteenth Amendment.  *Davis v. Passman*, 442 U.S. 228, 234-35 (1979) ("The equal protection component of the Due Process Clause thus confers on petitioner a federal constitutional right to be free from gender discrimination"); *Lauderdale v. Tex. Dep't of Criminal Justice, Institutional Div.*, 512 F.3d 157, 167 (5th Cir. 2007) (citing *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997)).  To state a prima facie case of discrimination under Section 1983[16], a plaintiff must show: 1) membership in a protected class; 2) that the plaintiff was qualified for the position at issue; 3) that the defendant made an adverse employment decision despite the plaintiff's qualifications; and 4) that the plaintiff was replaced by a person who was not a member of the protected class.  *Thomas v.*

---

[15] The record does not reveal who replaced Plaintiff, but as noted above, this information would seem to be "peculiarly within the knowledge of defendants."  *See Schultea*, 47 F.3d at 1432.
[16] The elements of a sex discrimination claim under the Equal Protection Clause are the same as those for a Title VII sex discrimination claim.  *Merwine v. Miss. Bd. of Tr.*, 754 F.2d 631, 635 n.3 (5th Cir. 1985).

*Tregre*, 913 F.3d 458, 462 (5th Cir. 2019), as revised (Jan. 25, 2019).

If the plaintiff can establish a prima facie case of sex discrimination, the burden shifts to the defendant to rebut the plaintiff's case by demonstrating a "legitimate, nondiscriminatory justification for its actions." *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 881 (5th Cir. 2003). If the defendant offers such a justification, the burden shifts back to the plaintiff, who must then show that the defendant's proffered reason is simply a pretext for discrimination. *Id.*

There can be no dispute that Plaintiff, a female, is a member of a protected class. *See Sumrall v. Boeing Co.*, No. CIV.A.103CV905WJGJMR, 2005 WL 1523378, at *10 (S.D. Miss. June 28, 2005) (noting that there was no question the female plaintiff alleging sex discrimination was a member of a protected class). The Court thus turns to the remaining elements of a prima facie claim.

1. Qualified for the position

Martin argues that Plaintiff was removed from her position as Co-Director of the SICU because she was placed on administrative leave and was unable to perform her duties. Defs.' Reply [31] at 2. He advances no explanation as to why she was not reinstated to this position when she returned from leave, *see id.*, and thus his argument does not establish that Plaintiff was unqualified as a Co-Director or trauma surgeon. Plaintiff has stated her qualifications for the positions of Co-Director and trauma surgeon in the First Amended Complaint, and she held the position of Co-Director for a period of time. First Am. Compl. [3] at 3. She alleges that when she returned from administrative leave, she was orally informed that the

reason for her removal as Co-Director was to "reduce stress." *Id.* at 8. This rationale is not based on Plaintiff's lack of qualifications for the position of Co-Director.

It is plausible Plaintiff could have been considered "unqualified" to be Co-Director at the time she was placed on administrative leave, insofar as she was not present to perform her job duties. *See* Defs.' Reply [31] at 2. However, this rationale was no longer present upon her return. *See id.* Even if Martin believed it would reduce Plaintiff's stress, as she alleges, that is not an assertion that she was unqualified for the position of Co-Director. Thus, Plaintiff has plausibly alleged that she was qualified for the position of Co-Director of the SICU and as a trauma surgeon at UMMC.

2.     Adverse employment decision and replacement with a male

Plaintiff alleges that she was demoted, harassed, and constructively discharged. Pl.'s Mem. in Opp'n [30] at 6. The conduct which she claims constituted harassment and which precipitated her constructive discharge included: (1) being demoted when she was stripped of her duties as Co-Director of SICU by Martin; (2) being placed on administrative leave by Smith; (3) being removed from the schedule without explanation by Martin and Smith; (4) being repeatedly investigated by Martin and Smith concerning unsubstantiated complaints. *See* First Am. Compl. [3] at 7-9; Pl.'s Mem. in Opp'n [30]at 8-9. Plaintiff does not sufficiently develop her theory of hostile work environment beyond a threadbare assertion, *see generally* First Am. Compl. [3]; Pl.'s Mem. in Opp'n [30], and the

Court understands this allegation to instead form part of her claim for constructive discharge. Plaintiff further contends that being stripped of her title and job duties as Co-Director constituted an adverse employment action in and of itself. Pl.'s Mem. in Opp'n [30] at 7.

Not every negative employment decision or event rises to the level of an adverse employment action that will support a discrimination or retaliation claim under 42 U.S.C. § 1983. *See Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014). Adverse employment actions include "ultimate employment decisions" such as hiring, firing, demoting, promoting, granting leave[17], and compensating, but do not include undesirable work assignments. *Id.*

a. <u>Demotion</u>

A demotion constitutes an adverse employment action. *Id.* Plaintiff asserts that Martin[18] stripped her of her title as Co-Director and the job duties that came with it. Pl.'s Mem. in Opp'n [30] at 7. According to Plaintiff, removal from the Co-Director position resulted in a loss of job responsibility, prestige, and title. *Id.* This is sufficient to plausibly state a claim for a demotion. *See Thompson*, 764 F.3d at 503. Thus, Plaintiff has plausibly alleged the adverse employment action prong of a prima facie case of sex discrimination.

Martin's discriminatory conduct against Plaintiff occurred when he allegedly demoted her from her position as Co-Director and replaced her with a male. Pl.'s

---

[17] Nowhere does Plaintiff specify which Defendant denied her leave requests so this purported adverse employment action will not be considered as it is insufficient. *See Reyes*, 168 F.3d at 161.
[18] This demotion claim is not directed at Smith as Plaintiff has not pleaded or asserted that he had any involvement in that decision. *See* First Am. Compl. [3] at 8; Pl.'s Mem. in Opp'n [30] at 7-8.

Mem. in Opp'n [30] at 7-8. Under clearly established precedent, demotions based upon sex are adverse employment actions, and a reasonable official should have known this would violate Plaintiff's rights under the Equal Protection Clause. *See Thompson*, 764 F.3d at 503 (noting that a demotion for an alleged discriminatory purpose is an adverse employment action). If Plaintiff has pled a prima facie case of sex discrimination, then Martin's alleged action in demoting her and replacing her with a male was conduct a reasonable official would have known violated the law. Thus, Martin would not be entitled to qualified immunity on Count 7 to the extent it is premised upon his demotion of Plaintiff.

b.    Constructive discharge

To prove constructive discharge, a "plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign." *Lauderdale*, 512 F.3d at 167 (quoting *Brown v. Kinney Shoe Co.*, 237 F.3d 556, 566 (5th Cir. 2001)). The following types of events can constitute relevant evidence leading a reasonable employee to feel compelled to resign:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status].

*Id.* (quoting *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000)). A plaintiff is not required to demonstrate that the employer specifically intended to force his resignation, but must show a greater degree of harassment than would be required for a hostile work environment claim. *Id.* This requires both discrimination and

some combination of the aggravating factors listed above. *Kinney Shoe Corp.*, 237 F.3d at 566.

Plaintiff has not alleged that her salary was reduced, that she was reassigned to menial work, that she was reassigned to work under a younger supervisor, or that she received offers for early retirement. She takes the position that she has plausibly alleged a constructive discharge claim because Martin demoted her; her job responsibilities were reduced; Smith placed her on extended administrative leave; Smith and Martin took her off the work schedule without justification; and they repeatedly investigated unsubstantiated complaints against her. Pl.'s Mem. in Opp'n [30] at 6. She alleges that at least one other male counterpart did not suffer any adverse action for engaging in behavior similar to hers. *Id.* Further, Plaintiff states that the administrative leave and the investigations undermined the respect she needed from staff in order to effectively perform her job as a trauma surgeon. *Id.* Plaintiff maintains that the job required her to be trusted and obeyed in life or death situations and that Martin and Smith's actions undermined the trust other staff had in her, making continued employment untenable. *Id.* at 6-7.

Plaintiff relies on *Idom v. Natchez-Adams School District*, and contends that in that case the plaintiff presented a prima facie case for adverse employment action where she was reprimanded, received unannounced visits from superiors, was accused of unprofessionalism, was "spoken down to" by the administration, and was offered employment under less favorable terms. *Idom v. Natchez-Adams Sch. Dist.*, 115 F. Supp. 3d 792, 798 (S.D. Miss. 2015).

However, the Court "must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity," to find that Plaintiff's right to be free from the conduct described above was clearly established at the time, or that such action would support a constructive discharge claim. *Morgan*, 659 F.3d at 371-72 (quotations omitted). It bears pointing out that *Idom* constitutes one case of persuasive, but not controlling, authority, and one case does not rise to the level of a robust consensus of persuasive authority.

Plaintiff has not pointed the Court to any clearly established law at the time finding that placement on paid administrative leave constituted an adverse employment action amounting to constructive discharge. *See McCoy v. City of Shreveport*, 492 F.3d 551, 558-59 (5th Cir. 2007) (finding no constructive discharge or adverse employment action where an employee was placed on paid administrative leave after making troubling comments to other employees at work). Even if paid administrative leave did constitute an adverse employment action in this context, it cannot be said that Smith's actions in initially placing Plaintiff on paid administrative leave were objectively unreasonable in light of clearly established law.

In *McCoy*, it was not found to be an adverse employment action for a police officer to be placed on paid administrative leave after she made troubling comments at work. *McCoy*, 492 F.3d at 558. Smith similarly placed Plaintiff on administrative leave after what he perceived were multiple reports of her making

problematic comments at work. First Am. Compl. [3] at 4, 7 (noting iCare reports of her bullying, being rude, and retaliating against persons who filed reports). Although the content of the comments in *McCoy* and in this case are different, in light of *McCoy*, a reasonable public official could think that it was lawful to place an employee on administrative leave with pay if that employee made troubling comments at work. Thus, qualified immunity should be granted to Smith to the extent Plaintiff asserts that Smith discriminated against her by placing her on administrative leave.

With respect to Plaintiff's contention that Martin and Smith harassed and repeatedly investigated her, she offers no details or specific facts alleging what acts of these Defendants constituted harassment or investigation. *See* First Am. Compl. [3] at 8; *see also* Mem. in Opp'n [30] at 6, 8. Without more, vague and non-specific allegations such as these are insufficient to support a claim for constructive discharge.

Turning to the broader constructive discharge issue, in *Brown v. Bunge Corporation*, the Fifth Circuit found no constructive discharge where the resigning employee showed he was demoted and assigned to a less desirable position with fewer job responsibilities. *Bunge Corp.*, 207 F.3d at 782-83. In *Jett v. Dallas Independent School District*, constructive discharge was not found where the plaintiff lost job responsibilities, was humiliated and embarrassed by a job reassignment, and claimed constitutional violations. *Jett v. Dallas Indep. Sch. Dist.*, 798 F.2d 748, 755 (5th Cir. 1986). In *Shawgo v. Spradlin* and *Junior v.*

*Texaco, Inc.*, constructive discharge was not found following negative work evaluations and disciplinary proceedings. *Shawgo v. Spradlin*, 701 F.2d 470, 481-82 (5th Cir. 1983) (derogatory comments following disciplinary proceedings insufficient to show constructive discharge); *Junior v. Texaco, Inc.*, 688 F.2d 377, 379-80 (5th Cir. 1982) (finding that a negative work review without threat of dismissal was not constructive termination), abrogated on other grounds by *Carroll v. Gen. Acc. Ins. Co. of Am.*, 891 F.2d 1174 (5th Cir. 1990).

Based on the foregoing, it was not clearly established law at the time of Martin and Smith's actions that the facts as alleged by Plaintiff would place a reasonable official on notice that the conduct she alleges these two Defendants engaged in would constitute a constructive discharge. Reasonable officials could have differed as to whether Martin's demotion of Plaintiff to a position with fewer responsibilities and Martin and Smith's actions in changing Plaintiff's shifts would support a constructive discharge claim under Fifth Circuit precedent. *See Bunge Corp.*, 207 F.3d at 782-83; *Jett*, 798 F.2d at 755. As for Martin and Smith's alleged investigations of Plaintiff, to the extent she alleges these embarrassed her in front of staff, *see* Pl.'s Mem. in Opp'n [30] at 6-7, this does not support a theory of constructive discharge under Fifth Circuit precedent, *see Jett*, 798 F.2d at 755. To the extent she believed these investigations, the nature of which are vague and unclear, were related to negative work reviews or disciplinary proceedings, this was not a case of constructive discharge under clearly established law. *See Shawgo*, 701 F.2d at 481-82; *Junior*, 688 F.2d at 379-80. Reasonable officials could differ as to

whether Martin and Smith's conduct clearly constituted constructive discharge. Thus, Martin and Smith are entitled to qualified immunity on Plaintiff's assertion that she was constructively discharged.

Because Martin and Smith's conduct related to any alleged constructive discharge and Smith's conduct in placing and maintaining Plaintiff on paid administrative leave did not violate Plaintiff's clearly established rights of which a reasonable official would have been aware at the time, qualified immunity should be granted to Martin and Smith based upon Plaintiff's claim that they discriminated against her on the basis of sex in violation of the Equal Protection Clause to the extent she claims she was constructively discharged.

3.  Replacement not of the protected class

Martin alleges that Plaintiff was not replaced by a man; instead Martin was the other Co-Director of the SICU, and when she was unable to complete her duties, he assumed the directorship responsibilities that had previously been divided between them. Defs.' Reply [31] at 2. Plaintiff counters that she was replaced by Martin and that members not in the protected class, such as Frei, did not experience similar adverse action. Pl.'s Mem. in Opp'n [30] at 8-9. At this stage of the proceeding, the Court must accept all well-pleaded facts as true and view those facts in the light most favorable to Plaintiff. *King-White*, 803 F.3d at 758. Therefore, the Court accepts as true that Plaintiff was replaced by Martin, who was not of the protected class, when she was demoted from her position as Co-Director. Pl.'s Mem. in Opp'n [30] at 9. Accordingly, Plaintiff has plausibly alleged the

replacement prong of a sex discrimination claim based upon her demotion.

In sum, Plaintiff has pled sufficient factual detail to plausibly state a prima facie case of sex discrimination under the Equal Protection Clause based on Martin's demotion of Plaintiff, but not as to her other sex discrimination claims against Martin or against Smith. The Court now turns to Martin's justifications for his actions to determine if he can successfully rebut Plaintiff's prima facie case on the demotion.

4.    Martin's justification and Plaintiff's pretext argument

Martin does not set forth specific justifications for his demotion of Plaintiff, other than that she was not able to fulfill her duties as Co-Director due to her administrative leave. Defs.' Reply [31] at 2. Martin has not advanced any justification explaining his rationale behind not reinstating Plaintiff when she returned from administrative leave, *see id*, but Plaintiff has raised a potential justification Martin may rely on to rebut a prima facie case: the iCare reports which precipitated her administrative leave. First Am. Compl. [3] at 3-7 (alleging Plaintiff was bullying, was rude, and was retaliating against persons who filed reports). Martin asserts that the other conduct that Plaintiff alleges he engaged in was necessary to run the trauma center. Defs.' Reply [31] at 2.

Here, to the extent the iCare reports and concerns about trauma center operations plausibly could constitute a nondiscriminatory reason for Plaintiff's demotion, Plaintiff has pled sufficient facts at this stage to rebut these as a pretext for sex discrimination. *See* First Am. Compl. [3] at 7. Specifically, Plaintiff

maintains that a male trauma surgeon, Frei, regularly shouted at and berated employees but was not demoted based on this conduct. *Id.* While Martin counters that Frei left UMMC's employment around the same time as Plaintiff, Defs.' Reply [31] at 2, Martin does not indicate whether Frei left because of a demotion or formal discharge. The Court finds that at this preliminary pleading stage, Plaintiff has alleged a prima facie case for a violation of her constitutional rights based upon her demotion, which, at this stage, Martin has failed to rebut.

Martin's Motion [17] for Qualified Immunity should be denied in part as to Plaintiff's claim in Count 7 that his conduct in demoting her constituted sex discrimination in violation of the Equal Protection Clause. The remainder of Plaintiff's claims in Count 7 as to Martin and Smith do not plausibly state violations of her clearly established rights of which reasonable officials would have known. Thus, Martin and Smith's Motions for Qualified Immunity should be granted as to the remaining claims alleged in Count 7.

The Court next turns to Martin and Smith's alleged retaliation against Plaintiff for exercising her First Amendment rights.

C.    Plaintiff's prima facie case of First Amendment Retaliation

Martin and Smith assert that there is no right under the Equal Protection Clause against workplace retaliation, and even if there were, it was not clearly established at the time. Martin's Mem. in Supp. [18] at 7; Smith's Mem. in Supp. [24] at 7. Plaintiff responds that her retaliation claim is premised upon the Fourteenth Amendment's incorporation of the "liberties guaranteed by the First

Amendment," including the right to free speech. Pl.'s Mem. in Opp'n [30] at 11. She relies on *Givhan v. Western Line Consolidated School District*, to show that it was clearly established that the government cannot retaliate against an employee for speech opposing discrimination in the workplace, or for petitioning for redress on such matters. *Id.* (citing *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410 (1979)). Martin and Smith counter that Plaintiff has not sufficiently pled an adverse employment action. Defs.' Reply [31] at 3.

To establish a First Amendment violation based on retaliation, a plaintiff must show that the (1) plaintiff suffered an adverse employment decision; (2) plaintiff's speech involved a matter of public concern; (3) plaintiff's interest in commenting on matters of public concern outweighed any interest the government employer had in promoting efficiency; and (4) plaintiff's speech was a substantial or motivating factor behind the government employer's adverse action. *Modica v. Taylor*, 465 F.3d 174, 180 (5th Cir. 2006).

1.      Adverse employment action

To establish that she suffered an adverse employment action, Plaintiff advances the same arguments in support of her retaliation claim as those raised in support of her sex discrimination claim. First Am. Compl. [3] at 14; Pl.'s Mem. in Opp'n [30] at 8. What may constitute an adverse employment action is the same for both a sex discrimination claim based upon the Equal Protection Clause and a retaliation claim under the First Amendment. *See McCoy*, 492 F.3d at 557 (discussing the prima facie case for the adverse employment action element of

discrimination and retaliation claims together). Thus, the same analysis with respect to the Equal Protection claim applies here, and for the same reasons, Plaintiff has plausibly alleged that she suffered an adverse employment action when she was demoted by Martin, but not as to any of Martin's other actions or Smith's conduct.

Furthermore, the same analysis applies with regard to the reasonableness of Martin's conduct under clearly established law at the time. The only alleged conduct that a reasonable official would have known violated clearly established law at the time was Martin's demotion of Plaintiff as Co-Director following her protected speech. Thus, the remainder of Plaintiff's prima facie case will be analyzed only as to the demotion. It bears repeating here that Smith played no role in Plaintiff's demotion.

2. Public concern

To determine whether a government employee's First Amendment rights have been violated, a court must ask if the employee's speech was made pursuant to the employee's official duties or as a citizen on a matter of public concern. *Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 469 (5th Cir. 2014). Reports of sex discrimination or harassment perpetrated in the workplace are considered to be of great public concern. *Wilson v. UT Health Ctr.*, 973 F.2d 1263, 1269 (5th Cir. 1992) (comparing sexual harassment with the racial discrimination noted to be inherently a matter of public concern in *Connick v. Myers*, 461 U.S. 138, 148 n. 8 (1983)).

Plaintiff alleges that on December 8, 2016, she wrote a letter to Defendants[19] stating her belief that being placed on administrative leave constituted unlawful disability and sex discrimination. First Am. Compl. [3] at 7. She explained that this was based in part on the status of Frei as a comparator. *Id.* Defendants' counsel allegedly responded that "he hesitated to tell supervisors about these allegations because it would 'polarize them against her.'" *Id.*

Plaintiff also alerted an unspecified Defendant upon her return from administrative leave that the concentrated work schedule she was assigned "appeared to be retaliation for her protected activity, discrimination, and a contravention of the previously-agreed reasonable accommodations." *Id.* at 9. Plaintiff contends that prior to leaving her employment with UMMC, she engaged in protected activity by filing EEOC charges on May 17, 2017. *Id.* at 14; Pl.'s Mem. in Opp'n [30] at 14.

Plaintiff alleges that the retaliation she faced was in response to her reports of sex discrimination in the workplace, among other things. First Am. Compl. [3] at 7, 9, 14. Because reports of sex discrimination in a government workplace are considered a matter of public concern, *Cf. Wilson*, 973 F.2d at 1269 (noting sexual harassment is inherently a matter of public concern), and because Plaintiff has alleged that on three occasions, she reported sex discrimination in her employment with UMMC and was allegedly retaliated against for doing so, Plaintiff has plausibly alleged this element of a retaliation claim.

---

[19] As noted earlier, the First Amended Complaint does not identify to which Defendants this letter was addressed. *See* First Am. Compl. [3] at 7.

3.  <u>Balancing interest in commenting on matters of public concern with any employer interest in promoting efficiency</u>

If the government employee was speaking "as a citizen, in commenting upon matters of public concern," a court must balance the employee's speech interest with the government employer's interest "in promoting the efficiency of the public services it performs." *Cutler*, 767 F.3d at 469 (citing *Lane v. Franks*, 573 U.S. 228, 236 (2014)).  Speech will not be protected "if legitimate government interests in limiting the speech outweigh the employee['s] interest in speaking." *Wilson*, 973 F.2d at 1270 (citing *Connick*, 461 U.S. at 150–51).

In *Wilson*, the defendants argued that the plaintiff's interest in reporting sexual harassment was outweighed by the government employer's interest in "eliminating dissension among its employees and in providing efficient police protection." *Id.*  The court found there had not been a sufficient showing made that the plaintiff did not speak in good faith.  Under those circumstances:

> UTHC's interest in maintaining a police force that is free of sexual intimidation, which Wilson's good faith reports would serve, outweighs any interest in departmental efficiency and harmony.

*Id.*

There is no allegation here that Plaintiff did not speak in good faith.  Further, Martin does not argue that UMMC had a legitimate interest in preventing employees from reporting sex discrimination in the workplace, and it is difficult to imagine he could.  Martin does proffer as an explanation for his actions that UMCC, as the only Level 1 Trauma Center in the State, must ensure the highest quality of care to patients.  Defs.' Reply [31] at 3.  Further, he argues that, as the medical

director of the unit, he required sufficient discretion to ensure patients succeeded, which included making decisions such as how to schedule physicians, whether to place physicians on leave when necessary, and how to make other employment decisions. *Id.*

To the extent these are rationales for the government employer's, and by extension Martin's, interest in limiting Plaintiff's speech, at least at the preliminary pleading stage, Martin has not shown how they outweigh UMMC's interest in having a workplace free of sex discrimination, or how they outweigh Plaintiff's interest in being permitted to report sex discrimination in the workplace. *See Wilson*, 973 F.2d at 1270. It is true that UMMC and Martin held a strong interest in maintaining a trauma center capable of delivering high quality care. However, this does not justify retaliating against employees for reporting sex discrimination, as is alleged here. In *Wilson*, the Fifth Circuit noted that the government's high interest in having a well-run police force to maintain the safety of the public did not permit the government employer to limit good faith employee reports of sex discrimination. *Wilson*, 973 F.2d at 1270. Similarly, the government's interest in a trauma room that provides quality care to patients, while high, does not in and of itself permit government employers to limit good faith employee reports of sex discrimination without fear of retaliation.

4. <u>Substantial or motivating factor in the employer's adverse action</u>

Finally, a plaintiff's speech must be a substantial or motivating factor behind the government employer's adverse employment action. *Modica*, 465 F.3d at 180.

In *Wilson*, the court found that the defendants who decided to discipline the plaintiff all knew of the plaintiff's protected speech and thus, each could have retaliated against her for it.  *Wilson*, 973 F.2d at 1270.  This was sufficient to find that the plaintiff's speech could have been a substantial or motivating factor in the adverse employment action.  *Id.*

Further, close timing between an employee's protected activity and an adverse employment action can be a sufficient basis to make out the substantial or motiving factor element of a prima facie case of retaliation.  *Mooney v. Lafayette Cty. Sch. Dist.*, 538 F. App'x 447, 454 (5th Cir. 2013).  Even when there has been a break in time between the protected speech and the adverse employment action, the Fifth Circuit has cautioned that this is not dispositive.  *Id.*  Rather, the "temporal proximity between protected activity and an adverse employment action," including the lack of temporal proximity, "should be viewed in the context of other evidence." *Id.*  For example, the plaintiff in *Mooney* established a prima facie case for the substantial or motivating factor prong when she alleged a chronology of events that plausibly stated a claim for retaliation.  *Id.*  This was the case even when there was a three-year period of time between her protected speech and the ultimate adverse employment decision.  *Id.*

Plaintiff argues that Martin was aware of her allegations and that the series of actions taken against her constituted an escalating chronology of retaliatory events.  Pl.'s Mem. in Opp'n [30] at 14.  Thus, she asserts that her reports of sex discrimination were a substantial or motivating factor behind Martin's adverse

action.  *Id.*  Plaintiff contends that from the time her protected activity began on December 8, 2016, each additional action she took to report discrimination resulted in a subsequent escalation of the retaliation, including her demotion.  *Id.*  Martin counters that his actions were objectively reasonable and necessary for the operation of the SICU, and that he did not act with retaliatory intent.  Defs.' Reply [31] at 3-4.

Plaintiff made her first report on December 8, 2016, after she was placed on administrative leave.  First Am. Compl. [3] at 7; Pl.'s Mem. in Opp'n [30] at 7.  She contends that when she returned to work, Martin removed her from her position as Co-Director of the SICU.  *See* First Am. Compl. [3] at 8; *see also* Pl.'s Mem. in Opp'n [30] at 8-9.  Plaintiff claims in her Memorandum in Opposition that Martin was aware of Plaintiff's December 8, 2016, report and his actions occurred after that report.  Pl.'s Mem. in Opp'n [30] at 14.  She contends that these events were part of Martin's pattern of retaliation against her, *id.*, and that although the events occurred after several months of administrative leave, this did not break the causal connection, *id.*  Because Martin was purportedly aware of Plaintiff's reports, and because the alleged retaliation followed soon after she returned to work after making the report, Plaintiff has plausibly stated a claim that her report was a motivating factor behind the alleged retaliation.

In sum, Plaintiff has plausibly alleged a prima facie case of First Amendment retaliation based upon her demotion by Martin.  Martin's Motion should be denied as to Plaintiff's claim in Count 8 that his conduct in demoting her constituted

retaliation for engaging in protected speech. The remainder of Plaintiff's claims in Count 8 as to Martin and Smith's actions were not violations of her clearly established rights of which reasonable officials would have known at the time they occurred for the same reasons discussed by the Court in its analysis of Plaintiff's sex discrimination claim. Thus, Martin and Smith's Motions for Qualified Immunity should be granted as to the remaining conduct alleged in Count 8.

The Court must now evaluate whether Martin is entitled to qualified immunity on Plaintiff's remaining claim on the grounds that his conduct as to the demotion was objectively reasonable.

D.    Qualified immunity

Even if a plaintiff has stated a prima facie case for violation of her constitutional rights, a defendant may still be entitled to qualified immunity if, upon viewing the evidence in the light most favorable to the nonmovant, reasonable public officials could differ on the lawfulness of the defendant's actions. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

At the pleading stage, Plaintiff has plausibly alleged a prima facie case of sex discrimination and First Amendment retaliation against Martin during her employment with UMMC based upon her demotion. It was clearly established at the time that sex discrimination in public employment violates the Equal Protection Clause of the Fourteenth Amendment. *Davis*, 442 U.S. at 234-35 ("The equal protection component of the Due Process Clause thus confers on petitioner a federal constitutional right to be free from gender discrimination"); *see also Lauderdale*, 512

F.3d at 167. It was also clearly established that a public employee has a right to report sexual harassment perpetrated in the workplace without fear of retaliation. *Wilson*, 973 F.2d at 1269. Thus, the Court must decide whether, based upon the factual allegations in the pleadings, Martin's actions were objectively unreasonable in light of Plaintiff's clearly established right to be free from sex discrimination and retaliation for protected speech when she was demoted.

As the Court has discussed, based upon the pleadings and accepting Plaintiff's factual allegations as true, Martin's conduct in demoting Plaintiff was not objectively reasonable in light of the clearly established law. Qualified immunity based on this conduct would not be appropriate at this early stage of the litigation. However, clearly established precedent at the time did not make Martin's other purported actions, including allegedly constructively discharging Plaintiff, patently unreasonable. *Supra* II(B)(2)(b), 19-20. Thus, Martin is entitled to qualified immunity on any part of Count 7 and Count 8 based upon his conduct in allegedly constructively discharging Plaintiff.

Smith is alleged to have engaged in the conduct of both placing and keeping Plaintiff on administrative leave and constructively discharging her, but as the Court has found, reasonable officials could have differed as to whether Smith's conduct violated Plaintiff's clearly established rights at the time. *Supra* II(B)(2)(b), 20-21. Smith is entitled to qualified immunity on Counts 7 and 8.

### III. <u>CONCLUSION</u>

To the extent the Court has not specifically addressed any of the parties'

34

arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Larry C. Martin's Motion [17] for Qualified Immunity is **DENIED IN PART** insofar as it relates to Plaintiff's claims premised upon his demotion of Plaintiff Theresa Elizabeth Robertson.   Plaintiff Theresa Elizabeth Robertson's claims in Counts 7 and 8 may proceed against Defendant Larry C. Martin individually for his conduct in allegedly demoting her from her position as Co-Director in violation of the Equal Protection Clause and First Amendment.  Defendant Martin's Motion [17] for Qualified Immunity is otherwise **GRANTED IN PART** insofar as it relates to the remainder of Plaintiff Theresa Elizabeth Robertson's claims against him, and those claims are **DISMISSED WITH PREJUDICE**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Defendant Patrick O. Smith's Motion [23] to Dismiss and for Qualified Immunity is **GRANTED**, and Plaintiff Theresa Elizabeth Robertson's claims against Defendant Patrick O. Smith are **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 23rd day of March, 2020.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE

35